UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GREGORY D. BETHEA, WILLIAM OLIVER, AVERY JETT, DARRYL E. BROWN and EARNEST McWHITE,  )<br>)<br>)<br>)<br>Plaintiffs,    )<br>)<br>-vs-       )<br>)<br>)<br>CSX TRANSPORTATION,    )<br>)<br>Defendant.   )<br>_____  ) | Civil Action No.: 4:11-cv-1569-RBH-TER<br><br><br><br><br><br>**ORDER** |

## I.   INTRODUCTION

This is an employment discrimination case. Presently before the court is Defendant's Motion to Strike (Document # 148) certain evidence offered by Plaintiffs Darryl Brown and Earnest McWhite in opposition to Defendant's Motions for Summary Judgment. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.

Specifically, Defendant seeks to strike Brown's Declaration, both Brown's and McWhite's EEOC Affidavits filed with their 2011 EEOC Charges of Discrimination, and Brown's and McWhite's Supplemental Interrogatory Responses, and Brown's 2012 EEOC Charge of Discrimination and Affidavit. Defendant argues that these documents are drafted by attorneys, are filled with conclusory and speculative allegations, and are inconsistent with Brown's and McWhite's deposition testimony.

## II.   APPLICABLE LAW

"It is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony." Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 300 (4th Cir.2006); see also Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Indeed, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Barwick, 736 F.2d at 960 (internal quotation omitted).

However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on a motion for summary judgment, Okoli v. City of Baltimore, 648 F.3d 216, 231 (4th Cir.2011) (internal quotations omitted) and, thus, to avoid infringing upon the province of the fact finder, striking affidavit testimony "must be carefully limited to situations involving flat contradictions[1] of material fact." Mandengue v. ADT Sec. Sys., Inc., No. ELH-09-3103, 2012 WL 892621, *18 (D. Md. Mar. 14, 2012) (emphasis added). The Mandengue court continued,

> The inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. Thus, the non-moving

---

[1] The Supreme Court first used the phrase "flatly contradicts" in Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999): "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."

> party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.

Id. (quoting Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009) (alterations omitted) (internal quotation marks omitted)). See also Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n.7 (4th Cir. 2001) (noting "there must exist a bona fide inconsistency" in order to render an affidavit a "sham" and finding that the district court had erred in finding unclear deposition testimony contradictory); Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893-94 (5th Cir. 1980) (a court "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition").

## III.   DISCUSSION

The court has reviewed the documents challenged by Defendant as well as Plaintiffs' reliance on these documents within their Responses in opposition to the Motions for Summary Judgment. Some of the averments challenged by Defendant simply are not material to a resolution of the Motions for Summary Judgment.

### A.   Brown's Declaration

Defendant points to specific portions of Brown's Declaration that it argues should be stricken as contradictory to Brown's deposition testimony.

> Brown's Declaration acknowledges that "[a]lthough [he] testified in [his] deposition that [he] thought [he] had been transferred out of Florence in February 2011, [he] remember[s] now that it was late March or early April when the transfer occurred" – "shortly after [his] third complaint to Turner about Beverly's racial harassment in March 2011." (Brown Decl. ¶ 4.) Similarly, Brown's Declaration states that "since [his] first complaints to Turner about Beverly, [Turner] treated [Brown] with outright hostility" and "would not even shake [Brown's] hand" (Brown Decl. ¶ 12), whereas in deposition, Brown attributed Turner's purported refusal to acknowledge him with a greeting to solely to racial harassment—not retaliation. (Brown Dep. 142, 198-201.)

> Brown's Declaration admittedly contradicts his prior sworn testimony in order to belatedly manufacture a causal link between his complaints and alleged retaliation.

Motion to Strike p. 3.

Neither of these Declaration statements are flatly contradictory Brown's deposition testimony. Although the date Brown asserts that he transferred out of Florence is different, Brown explains that he simply remembered incorrectly. Further, whether Turner's refusal to acknowledge Brown is attributable to harassment or retaliation is a legal argument. The facts themselves are not flatly contradictory.

> Brown alleges in his Declaration that purported negative comments on his 2011 performance review translated into his bonus being "$6,000-7,000 less than it should have been." (Brown Decl. ¶ 14.) Yet when questioned in deposition about what financial losses he suffered because of discrimination, harassment or retaliation at CSXT, Brown identified various personal expenses that he claimed to have incurred as a result of the alleged harassment but stated that he "[didn't] think [the alleged harassment and retaliation] does a lot for promotions and bonuses for [him]". (Brown Dep. 196-97.) He also stated that he "couldn't give you a dollar amount or quantify" these alleged losses. (Id.)

Motion to Strike pp. 3-4.

Plaintiff quantifying the amount of the bonus he lost is an elaboration on his deposition testimony that he thought the negative performance review affected his bonuses. While the varying testimony may give rise to a credibility issue, it is not flatly contradictory and, thus, striking this portion of the Declaration is not appropriate.

> Brown's Declaration alleges that he was "frequently assigned to work the Sperry car" which "is typically a job for Track Inspector[.]" (Brown Decl. ¶ 5.) Brown's opposition paints this "fact" as part of the harassment he purportedly endured (see Brown Opp. 8), but when questioned exhaustively about the forms of harassment he allegedly encountered at CSXT, Brown did not mention having to work the Sperry car. (See Brown Dep. 212.)
>
> Brown's Declaration describes a series of transfers to "failing" and "problematic" stations which he claims were implemented against him in retaliation for

> complaining about alleged harassment. (Brown Decl. ¶¶ 6-9.) Brown also alleges that these stations were "3 hours" and "over four hours from [his] home." Yet when asked in deposition about the forms of retaliation he endured at CSXT, Brown simply said that "since the charges were filed … [he] [hadn't] been assigned in [his] range," and mentioned nothing about failing or problematic stations, nor about three- to four-hour commutes. (Brown Dep. 198-200.)
>
> Brown's Declaration contends that he "was forced to work unusually long hours – late on Fridays … and many weekends" in retaliation for filing his 2011 EEOC charge. (Brown Decl. ¶ 10; see also Brown Opp. 11.) Yet when questioned exhaustively about the retaliation he allegedly endured at CSXT in deposition, Brown neglected to mention this allegation. (Brown Dep. 198-99, 206-07.)
>
> Brown's Declaration alleges that "Turner moved [him] around far more than [his] White peers." (Brown Decl. ¶ 13.) When asked in deposition to identify all instances of alleged discrimination, harassment and retaliation, however, Brown did not make this allegation. (See Brown Dep. 212.)

Motion to Strike p. 4.

None of the above portions of Brown's Declaration are flatly contradictory to his deposition testimony. In the cited pages of Brown's deposition, he states "I cannot think of anything else right now," or "nothing more that I can recall right now," or "I can't think of any others right now." Brown Dep. 206, 207, 212. While the differences between the Declaration testimony and the deposition testimony may give rise to a credibility issue for the trier of fact, striking these portions of the Declaration is not appropriate as it is not flatly contradictory to the deposition testimony.

> Brown makes a post-hoc allegation that he worked around Beverly an "average[] [of] two weeks per month", and that "[Beverly's] harassment of [Brown] was nearly constant" during that time. (Brown Decl. ¶ 15; see also Brown Opp. 5, 15.) These newly-created "facts" are also inconsistent with the record testimony, which establishes that Brown worked with Beverly off and on, and has not worked with him in 1-2 years. (Brown Dep. 47-48, 90; Beverly Dep. 90-91 (Brown "really didn't work with [Beverly] very often" – "[i]t may have been a week here or there, or a day or two, but for a prolonged period of time, no.")).

Motion to Strike p. 4.

-5-

The portions Brown's deposition testimony cited by Defendant here do not address the amount of time Brown worked with Beverly, they address only the length of time since Brown has worked with Beverly. The only testimony cited by Defendant that relates to the amount of time Brown worked with Beverly is Beverly's. Thus, this argument by Defendant is without merit.

### B.      Brown's and McWhite's 2011 EEOC Affidavits

Defendant raises specific arguments with respect to Brown's and McWhite's 2011 EEOC Affidavits, which were provided to Defendant prior to Brown's and McWhite's depositions, taken on June 1, 2012, and May 31, 2012, respectively.

> [T]he Brown 2011 Affidavit alleges that Brown was called "a 'lazy nigger,' 'a damn monkey,' 'a lazy ass African,' 'black as tar,' 'a CSX slave,' and 'a Florence Division token' by both lower and upper management at CSXT[.]" The Brown's 2011 Affidavit further alleges that Roadmaster Chad Beverly called Brown "a straight off the boat from Africa Black," referred to him as "a token Black on the Florence Division," and "a replacement for Mike Thompson, who was the past token Black." He further claims Beverly said that "Ernest McWhite and Ron Baldwin were the new token Blacks on the Florence Division," and that "we shouldn't get our hopes up about being promoted since there weren't any Black Roadmasters on the Florence Division." Brown's 2011 Affidavit also claims he witnessed Beverly threatening and racially harassing his co-Plaintiff, Ernest McWhite, by calling McWhite "his bitch" and stating to McWhite that "if he told him to piss sitting down that he had better do so," and that Engineer of Track John Turner took away his Hi-Rail vehicle, leaving him the only Assistant Roadmaster without such a vehicle. When Brown was asked in deposition to identify all forms of harassment and discrimination he experienced at CSXT, he did not mention any of these alleged comments or incidents (see Brown Dep. 212), yet now he seeks to rely on them as evidence of purported harassment. (Brown Opp. 3-5, 14-15, 21.)
>
> The McWhite 2011 Affidavit alleges that McWhite was called a "coon" and "lazy African" by "both lower and upper management at CSXT; called "stupid" by Beverly; and told by Beverly that he "couldn't learn because [he] was a lazy, dumb nigger and wouldn't comprehend the railroad anyway," and that he "got [his] promotion because 'CSXT has to have at least 3 Blacks at all times to keep Jesse Jackson and Al Sharpton off our asses." The Affidavit also alleges that Beverly and Turner told McWhite "that the reason 'we don't have Black Roadmasters or Black Division Engineers on the Florence Division is that if we had more than 2 or 3 Blacks in these positions, the railroad would go to shit." McWhite's Affidavit further alleges

> that Beverly told him, "I was his bitch, and that if he told me to squat and piss, I was to do so." When McWhite was asked in deposition to identify all forms of harassment and discrimination he experienced at CSXT, he did not mention any of these alleged comments or incidents (see McWhite Dep. 255-56, 262-63), yet now he seeks to rely on them as evidence of purported harassment. (McWhite Opp. 3-4, 11-12, 15-16, 19, 33.)

Motion to Strike pp. 6-7.

Again, Defendant's argument here is not that the averments raised in Brown's and McWhite's 2011 Affidavits are contradictory to their deposition testimony, but that they neglected to raise these issues in their deposition. Thus, these facts are not flatly contradictory and striking them is not proper.

> Additionally, McWhite alleges in his EEOC Affidavit that he has "reported these racist statements to both [his] immediate supervisor and to upper level management at CSXT on numerous occasions over the years. However, nothing has ever been done to investigate." Contrary to this allegation, however, McWhite's deposition establishes that he only made one complaint about the alleged mistreatment to anyone at CSXT, the one complaint was to the Ethics Hotline (and was not a complaint of race discrimination or harassment), and that he was interviewed in connection with this complaint. (McWhite Dep. 97, 245 Exs. 15, 16, 18.).

Motion to Strike p. 7.

While this portion of McWhite's EEOC Affidavit is contradictory to his deposition testimony, McWhite does not rely on it in his Response to Defendant's Motion for Summary Judgment. McWhite relies only on his complaint about Beverly's conduct in his call to the Ethics Hotline, his follow-up written complaint, his interview with the EEO investigator and his subsequent EEOC Charge of Discrimination. Thus, this challenged portion of Plaintiff's EEOC Affidavit is not material to the determination of the Motion.

Defendant also asserts that the 2011 EEOC Affidavits contain conclusory, speculative and unsupported allegations and, thus, asks that the Affidavits themselves be excluded. Defendant

generally argues that the 2011 EEOC Affidavits are "heavily laden with conclusory, speculative, and unsupported allegations" and then provides examples of some, but not all, such statements. However, Defendant does not identify the context in which these "conclusory, speculative, and unsupported allegations" are used in Plaintiffs' Responses to the Motions for Summary Judgment. Under appropriate circumstances, portions of or even entire affidavits may be stricken. However, absent the context in which such statements are used the court is unable to determine whether they are indeed conclusory and, thus, subject to exclusion. Therefore, Defendant's request that the 2011 EEOC Affidavits be excluded is denied.

        **C.**    **Second Supplemental Interrogatory Responses**

Defendant argues that Plaintiffs cannot rely on additional "evidence" they submitted in their second supplemental discovery responses, which were served during the final week of discovery:

> Through their supplemental responses, Plaintiffs attempt to sneak in numerous new harassment allegations. (See Brown Opp. Ex. 2 at 4-5, 11-12; McWhite Opp. Ex. C at 6-7.) For example, Brown's supplemental response to Interrogatory No. 9 identifies Jordy Carter as an individual who "witnessed Beverly sending me on no-purpose, pointless tasks." (Brown Opp. Ex. 2 at 4.) Brown mentioned nothing about pointless errands in deposition (Brown Dep. 209-12), but now raises this allegation in his Opposition and cites his supplemental responses as "evidence." (Brown Opp. 4, 20.) Similarly, Brown's supplemental response to Interrogatory No. 9 identified Travis Hackler and James Green as individuals who witnessed "how I was always assigned by John Turner and Bobby Moore to manage and work with mostly Black extra gangs, unlike my white peers." (Brown Opp. Ex. 2 at 4-5.) Brown did not raise this allegation in his deposition (Brown Dep. 212), but now relies on his supplemental responses as "evidence" in support of it.6 (Brown Opp. 7-8.)

Motion to Strike pp. 10-11.

Again, this evidence is not flatly contradictory to Brown's or McWhite's deposition testimony. Thus, striking these portions of the Second Supplemental Interrogatory Responses is not appropriate.

Defendant also seeks to strike Brown's supplemental response to Interrogatory No. 13, in which Brown details the various forms of mental and emotional stress he alleges he has suffered as a result of the purported harassment and retaliation he experienced. Defendant seeks to strike this as contradictory to Brown's deposition testimony. However, this information is not flatly contradictory to the deposition testimony. In addition, it is more relevant to Brown's damages than it is to whether summary judgment is appropriate and, thus, is not material at this stage of the litigation. Accordingly, striking this response is not appropriate.

Finally, Defendant challenges Brown's citation to his 2012 Charge of Discrimination. However, as noted by Plaintiffs, citation to Brown's 2012 EEOC Charge of Discrimination and Affidavit is solely for the purpose of establishing the date on which it was filed, for which Defendant fails to show justification to strike.

Accordingly, Defendant's Motion to Strike (Document # 148) is **DENIED**.

**IT IS SO ORDERED**.

                                            s/Thomas E. Rogers, III
                                            Thomas E. Rogers, III
                                            United States Magistrate Judge

August 21, 2013
Florence, South Carolina