UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GREGORY D. BETHEA, WILLIAM OLIVER, AVERY JETT, DARRYL E. BROWN and EARNEST McWHITE, <br><br> Plaintiffs, <br><br> -vs- <br><br> CSX TRANSPORTATION, <br><br> Defendant. | Civil Action No.: 4:11-cv-1569-RBH-TER <br><br><br><br> **ORDER** |

## I.  INTRODUCTION

This is an employment discrimination case. Of the five captioned Plaintiffs, Bethea, Oliver and Jett have been dismissed per stipulations of dismissal filed by the parties. Thus, only Plaintiffs Brown and McWhite remain in this action. On September 17, 2013, the district judge entered Orders (Documents # 183, 184) denying summary judgment as to Brown's claims of retaliation and hostile work environment and McWhite's claim of hostile work environment and granting summary judgment as to McWhite's retaliation claim. Presently before the court is Defendant's Motion to Strike (Document # 88) Plaintiff's expert, Jay Finkelman. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.

## II.  DISCUSSION

Dr. Jay Finkelman is an industrial psychologist who was retained by Plaintiffs to "determine whether CSXT has had adequate and appropriate Human Resource policies and procedures" regarding racial harassment and to opine as to whether, "based upon the facts, ... Plaintiffs have been

exposed to a racially hostile work environment." Finkelman Expert Report pp. 20-21 (Ex. 2 to Finkelman Dep.). At the time Finkelman was retained, Plaintiffs presented this action as a purported class action. Finkelman's expert report is dated July 16, 2012. Id. p. 1.

At the time Finkelman's deposition was taken on September 21, 2012, Plaintiffs had abandoned their class claims and were proceeding individually. Finkelman brought with him to the deposition handwritten notes in which he listed "25 observations"[1] regarding the "components of racially hostile work environments." Finkelman Dep. pp. 131-32 and Ex. 5. Finkelman admits that the contents of his handwritten notes are not contained in his expert report; however, he states that the contents of his handwritten notes "may be the major focus of what I testify about." Finkelman Dep. p. 132. Defendant characterizes these handwritten notes as a second, untimely expert report.

Later, on November 5, 2012, Plaintiff submitted Finkelman's Rebuttal Report (Ex. A to Def. Motion to Strike) to one of Defendant's expert reports. Defendant characterizes Finkelman's rebuttal report as a third expert report. In the Rebuttal Report, Finkelman states that Defendant's expert, Dr. Locklear, addressed in her report points that Finkelman no longer intends to "pursue" at trial. He further states that he made clear during his deposition that he would only be describing the elements of a racially hostile work environment, which were summarized in his handwritten notes presented during his deposition. In the Rebuttal Report, Finkelman reiterates the list of elements of a racially hostile work environment, and provides the following commentary:

> The more of these elements that are present on the job, the greater the severity of the racially hostile work environment, from a human resource management perspective. It is important to recognize that any aggregation of these improprieties becomes more serious than when they occur in isolation. Also, the frequency of their occurrence is very significant. Human resource management professionals and Industrial-

---

[1]There actually are 27 statements listed in the handwritten notes.

> Organizational Psychologists recognize that single incidents and/or superficial events, do not usually rise to the level of a hostile work environment. Rather, the frequency of the occurrence and the variety of elements that converge on the same racial animus and abuse, coupled with the severity the language or adverse action, is what an investigator and a jury needs to consider in making a determination as to whether a racially hostile workplace has become manifest.

Rebuttal Report p. 3.

Defendant moves to strike Dr. Finkelman as an expert in this case for several reasons, including his failure to clearly identify the scope of his opinion, the untimeliness of the second and third "reports" as characterized by Defendant, and because his testimony is neither relevant nor reliable. Because the undersigned concludes that the testimony Dr. Finkelman proposes to offer would not aid the jury to understand evidence and, thus, is not relevant, the court need not address the other issues raised by Defendant.

Federal Rule of Evidence 702 permits an expert to give opinions on scientific matters, technical matters, or matters involving other specialized knowledge so long as the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." The touchtone of this rule is whether the testimony will assist the jury. The Fourth Circuit has held that it does not help the jury for an expert to give testimony that "states a legal standard or draws a legal conclusion by applying law to the facts" and, thus, such opinions are generally inadmissable. U.S. v. McIver, 470 F.3d 550, 562 (4th Cir. 2006). "Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as the applicable law or the rule of the jury in applying the law to the facts before it." U.S. v. Chapman, 209 F.App'x 269-79 (4th Cir. 2006). However, the Fourth Circuit has also held expert testimony may be admitted when the legal regime is complex and the witness' testimony would be helpful in explaining it to the jury. U.S. v.

Offill, 666 F.3d 168, 175 (4th Cir. 2011) (citing Barile, 286 F.3d at 760 n.7).

In his original Report, Dr. Finkelman sets forth the facts as understood by him and concludes that "based upon these reported incidents, it is my opinion that plaintiffs were, in fact, subjected to a racially hostile environment. The evidence is consistent and overwhelming." Expert Report p. 33.[2] Later, in the handwritten notes produced during his deposition and his Rebuttal Report, Dr. Finkelman specifically identifies the defining characteristics of a hostile work environment[3] and then notes that the more of the characteristics that are present, the greater the severity of the racially hostile environment, that aggregation of these characteristics is more serious than when they occur in isolation, and that the frequency of their occurrence is significant. Rebuttal Report pp. 2-3.

In essence, the matters on which Dr. Finkelman proposes to testify are similar to the legal factors necessary in determining whether a hostile work environment exists. See, e.g., Ziskie v.

---

[2]Dr. Finkelman also opines as to the adequacy of Defendant's mechanisms to address and remedy complaints of a racially hostile work environment. Expert Report p. 33. However, as later clarified in his deposition and his Rebuttal Report, Dr. Finkelman no longer plans to offer an opinion on the adequacy of these mechanisms.

[3]These characteristics are racial obscenities, foul language, demeaning language, racial jokes, demeaning jokes, stereotypical racial expressions, racial slurs or attacks, failure to investigate race claims properly, failure to promote or demotions unrelated to performance or potential, failure to interview relevant witnesses, retaliation for complaining, severe and pervasive unwelcome conduct, failure to punish wrongdoers, assigning harder or dirtier work systematically, excluding from training or developmental activity, differential failure to mentor or coach, differential requirement of OT or holiday work, differential failure to grant meal or rest breaks, differential failure to grant desired vacations, harsher supervision or punishment, differential performance standards, lower compensation for similar work, higher threshold requirements for promotions, differential withholding of bonus payments, differential selection for layoff or RIF, assignment to less capable supervisor, assignment to less desirable locations, and marginalizing or shunning or humiliating. Rebuttal Report pp. 2-3.

Mineta, 547 F.3d 220, 224 (4th Cir.2008) (setting forth the elements of a hostile work environment claim). This area of the law is not particularly complex. Other courts have concluded that similar testimony is not necessary to aid the jury in reaching a decision. See Lipsett v. University of Puerto Rico, 740 F. Supp. 921, 925 (D.P.R. 1990) (holding in a sexually hostile work enviroment case that "the jury does not need additional enlightenment on this particular issue: this subject does not lend itself to expert testimony because it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life and their attitudes toward sexual matters"); Smith v. Colorado Interstate Gas Co., 794 F. Supp. 1035, 1044 (D. Colo. 1992) (granting defendant's motion to exclude expert testimony regarding gender and race discrimination because "[g]ender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert," and stating that experts may not "impermissibly seek to direct the result . . . [of the] case"); Rieger v. Orlor, Inc., 427 F. Supp. 2d 99, 104 (D. Conn. 2006) (barring expert testimony regarding whether a company could have accommodated a plaintiff's disability because it "invokes legal standards" and "would not aid the jury in making a decision, but rather attempts to substitute . . . [the expert's] judgment for the jury's"); Wilson v. Muckala, 303 F.3d 1207, 1218 (10th Cir. 2002) (affirming district court's exclusion of plaintiff's human resources expert in sexual harassment case, agreeing with lower court that "the facts were 'not so complicated as to require the testimony of an expert witness on either the adequacy of the [sexual harassment] plan or policy or the investigation' that followed"); Smith v. Borg-Warner Auto. Diversified Transmission Prods. Corp., Cause No. IP98-1609, 2000 U.S. Dist. LEXIS 10200, at *40 (S.D. Ind. July 19, 2000) (plaintiff's human resources expert report on failure to exercise reasonable care or follow customary practice concerning the retention of employment documents in the RIF context excluded because it "would

not be of assistance to the jury"); Ward v. Westland Plastics, Inc., 651 F.2d 1266, 1271 (9th Cir. 1980) (affirming exclusion of expert testimony because the "question whether gender was the basis of differential treatment is not so technical as to require the aid of an expert to enlighten the jury or court").

In addition, several courts have addressed testimony offered by Dr. Finkelman similar to what he proposes to offer here and have concluded that such testimony is unnecessary to aid the trier of fact. See Kotla v. Regents of Univ. of Cal., 115 Cal. App. 4th 283 (2004) (holding that it was error for the trial court to allow Dr. Finkelman's testimony that certain facts were "indicators" of retaliation because the testimony had improperly invaded the province of the jury to draw conclusions from the evidence); Humphreys v. Regents of the University of California, No. C 04-03808 SI (N.D.Ca. July 6, 2006) (excluding Dr. Finkelman's testimony that the defendant's failure to comply with good human resources practices is indicative of discrimination because such testimony was unlikely to assist the jury).

Dr. Finkelman vacillates as to exactly how he will testify. In his original Report, he indicated that the facts as presented to him are indicative of a racially hostile work environment. Later, in his Rebuttal Report he asserts that he will give his opinion generally as to what constitutes a racially hostile work environment. Either way, the testimony is improper and unnecessary; the former would invade the province of the jury and the latter would invade the province of the court. Plaintiff's argument that Dr. Finkelman does not intend to testify to a legal standard but, rather, on the elements of a hostile work environment "from a human resources perspective" is unavailing. The goal of the jury will be to determine whether the facts as they decide them to be are violative of the legal standard for a hostile work environment, not a "human resources" standard. To this end, Dr.

Finkelman's testimony would serve only to confuse the jury as to which standard to apply. Also, this does not involve complex concepts or circumstances for which the fact finder needs expert explanation.

Because the proffered testimony of Dr. Finkelman would not "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702, Defendant's Motion to Strike (Document # 88) Plaintiff's expert, Jay Finkelman, is **GRANTED**.

**IT IS SO ORDERED**.

                                                s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 30, 2013
Florence, South Carolina